MAXWELL, JUSTICE, FOR THE COURT:
¶ 1. Our trial judges have considerable discretion over discovery matters. This discretion extends to the handling of requests for continuances or mistrials based on alleged discovery violations. In this case, an expert witness testified that injuries to a child were consistent with sexual abuse. Her reports, photographs of the injured body area, and expert opinion were previously disclosed to the defense. Yet, at trial, the defense took issue with the expert’s testimony about the relevance of the shape of some of the injuries. After thoughtfully assessing the defendant’s request to exclude the expert’s testimony, the trial judge denied it. Though she found no discovery violation, the judge recessed trial for the day so defense counsel could further interview the expert. She also restricted the expert’s testimony to external injuries but allowed the expert to give an opinion that the child’s injuries resulted from sexual assault. ■
¶2. On appeal, we find no abuse of discretion in the judge’s handling of this issue, nor do we find she abused her discretion in denying a mistrial. Another alleged error involving the giving of a Sharplin[1] instruction lacks merit. And the defendant’s claims of prosecutorial misconduct were either waived or unfounded.
¶ 3. We affirm.
Background Facts and Procedural History
¶ 4. In 2012, Jesse Frank Mouton lived with his brother Jody and Jody’s girlfriend Katelyn, at the Country Living Trailer Park in Woolmarket, Mississippi. Katelyn often babysat Toni Carpenter’s children— three-year-old N.B. and two-year-old A.B. On June 17, 2012, Toni noticed that N.B. “act[edj with discomfort” when she strapped him in his car seat.[2] Toni asked N.B. what was wrong. And he said “his butt was hurting.” He told her Mouton “had been playing with his butt and wiener.” When Toni confronted Mouton, N.B. pointed to Mouton and again said Mouton had played “with his butt and wiener.”
¶ 5. Ocean Springs Hospital performed a sexual-assault examination on the child.[3] And Susan Auge, a Sexual Assault Nurse Examiner, interviewed and examined N.B. Auge found four injuries to N.B.’s anus—a “rather large” abrasion and three anal tears. Auge concluded N.B.’s injuries were consistent with sexual abuse. She produced a ten-page forensic report, along with photographs taken during N.B.’s interview and examination.
*1082 ¶ 6. On April 13, 2015, a Harrison County grand jury indicted Mouton on four counts of sexually assaulting N.B. Counts one and two charged Mouton with sexual battery.[4] Counts three and four charged him with touching a child for lustful purposes..[5]
¶ 7. Mouton was tried in May 2015. The State presented evidence and testimony from Toni, Auge, and a Biloxi police investigator, among other witnesses. Auge testified as an expert witness. She described one of the tears to N.B.’s anüs as “V-shaped.” In her opinion, the child’s anal tears were consistent with sexual-assault.
'¶ 8. Mouton objected, claiming the State failed to disclose Auge’s opinion on the significance of the “V-shaped” tear.[6] He argued this violated Mississippi Uniform Rule of Circuit and County Coürt Practice 9.04. But the trial judge disagreed. She found no discovery violation and held the State had met its discovery obligations. Thus, she denied Mouton’s motion for a mistrial.
¶ 9. The judge did, however, grant a brief continuance .and recessed court for the day to give Mouton an additional opportunity to question Auge about her expected testimony. When trial resumed the next day, the judge permitted Auge to testify. But the judge limited her testimony to only the external injuries she had observed while examining N.B.
¶ 10. The State also called Toni as a witness. Inconsistencies arose concerning' her initial statement to police and trial testimony. She originally told police Mouton’s ex-wife, Shannon McGrew, had informed her of other sexual-assault allegations involving Mouton and one of his children. But at trial, Toni claimed no knowledge of prior allegations against Mouton.- She testified she made these statements to the police while she was “distraught and very flustered.” Mouton called Shannon in response. She testified that the Mississippi Department of Human Services had cleared Mouton in the prior sexual-assault investigation. During cross-examination, the State asked Shannon if Mouton had visitation with their children and whether that visitation was supervised. Shannon answered affirmatively to both questions. Shannon was the defense’s 'sole trial witness.
¶ 11, After nearly four hours of deliberation, the jury sent a rióte to the judge. The note explained the jurors were unable to reach a unanimous decision and needed guidance. After hearing from both sides, the judge decided to read a Sharplin instruction to the jury, instructing them to continue to deliberate. See Sharplin, 330 So.2d at 596. Forty-one minutes later the jury returned its verdict—finding Mouton guilty on one count of sexual battery and not guilty of the remaining three counts.
¶ 12. Mouton filed a post-trial motion, seeking.a new trial or judgment notwithstanding the verdict. In it, he claimed three specific errors—(1) the State violated discovery rules by failing to disclose Auge’s expert opinion on the shape of N.B.’s injuries; (2) the trial court gave an improper Sharplin instruction; and (3) the State committed prosecutorial misconduct during Toni’s and; Shannon’s testimony. The trial judge denied Mouton’s motion. *1083 On appeal, Mouton raises the same three claimed errors.
Discussion
I. Discovery Violation
¶ 13. From the beginning of trial, Mouton made a host of inconsistent discovery-violation claims. But he only advances one on appeal—that the State introduced undisclosed expert testimony about the significance of the shape of N.B.’s anal tears.
' ¶ 14. Mouton does not claim that Auge was not qualified to give an opinion that N.B.’s injuries were consistent with sexual abuse. Nor does he claim the State failed to provide discovery and photographs depicting the child’s anal tears. Rather, what Mouton coins a discovery violation is that Auge did hot write the words “V-shaped tear” in the disclosed materials. So, as he sees it, Auge could not testify that one of the depicted tears to the' child’s anus was V-shaped, and that N.B.’s injuries were consistent with sexual abusé. For this reason, Mouton insists, the judge erred by finding no discovery violation, improperly allowing Auge to continue testifying, and not granting his motion for a mistrial.,
A. Standard of Review .
¶15. The decision to. admit or exclude evidence is left to the trial court’s discretion. Wade v. State, 683 So.2d 965, 967 (Miss. 1991) (citations omitted). And we review evidentiary decisions for abuse of discretion. Taylor v. State, 954 So.2d 944, 947 (Miss. 2007) (citations omitted). This abuse-of-discretion standard also extends to alleged violations of Mississippi Uniform Rule of Circuit and County Court Practice 9.04 and to a trial court’s denial of motions for continuance or mistrial. See Payton v. State, 897 So.2d 921, 942 (Miss. 2003) (decisions on Rule 9.04 and motions for continuance are within the trial court’s discretion); see also Hurst v. State, 195 So.3d 736, 744 (Miss. 2016) (decisions on motions for mistrial 'are within the trial coui’t’s discretion).
¶ 16. Under Rule 9.04(1), if the State attempts to introduce previously undisclosed evidence, the defense may object and be afforded an opportunity to examine the evidence or interview the witness; URCCC 9.04(1). If, after examination or interview, the defense claims unfair surprise or prejudice, the judge may either exclude the evidence or grant a continuance or mistrial. Id.
¶ 17. Mouton’s counsel admitted he had received Auge’s ten-page forensic report—a report that specifically diagrams and pinpoints the three distinct tears to N.B.’s anus. Defense counsel also acknowledged he had received photographs of the tears. And he admitted receiving a letter from the State, disclosing that Auge would testify that the child’s injuries were consistent with sexual assault. Defense counsel also acknowledged he “interviewed [Auge] on at least one occasion” before trial.
¶ 18. The record shows the trial judge carefully considered Mouton’s argument, finding no merit to the bulk of it. While she found no discovery violation, the judge still employed a “modified So* procedure” by.granting Mouton a brief continuance. See Box v. State, 437 So.2d 19 (Miss. 1983). The judge recessed court for the day and Mouton was allowed additional time to interview Auge. And ultimately, Auge’s testimony was limited. Because Auge had- not examined N.B. internally, the judge restricted her from testifying about internal injuries. But, given the State’s discovery and disclosures to Mouton, and the additional time to question the expert, Auge was allowed to continue her expert testimony.
¶ 19. After review, we find no abuse of discretion in the judge’s handling of the claimed discovery violation. From the *1084 State’s discovery—which Mouton admitted receiving—it was clear Auge would testify that the anal tears depicted in the photographs and forensic reports were consistent with sexual assault. And the judge was thoughtful in her evidentiary analysis, crafting an approach that granted Mouton’s request for additional time to question Auge, and ultimately limiting the expert’s testimony to only external injuries.[7] The judge did not abuse her discretion in denying a mistrial and allowing Auge to give her opinion about the cause of the child’s external injuries.
II. Sharplin Instruction
¶ 20. Mouton next argues the trial judge’s Sharplin instruction was improper and prejudicial. Mouton claims that because the jury’s note indicated the numerical split among jurors—“8-3 guilty”—the judge’s Sharplin instruction was designed to influence the jury’s decision.
¶ 21. We have approved using a Sharplin instruction when a jury says it cannot reach a unanimous verdict. See Powell v. State, 58 So.3d 55, 57-58 (Miss. 2011); see also Tyler v. State, 19 So.3d 663, 667-68 (Miss. 2009). But given “the possibility of coercion,” this Court takes note of a trial judge’s “conduct and comments after he receives the [jury’s] division[.]” Sharplin, 330 So.2d at 596. It is reversible error for a trial judge to attempt “to force a verdict by suggestive or coercive measures.” Lafayette v. State, 90 So.3d 1215, 1219 (Miss. 2012) (quoting Isom v. State, 481 So.2d 820, 822 (Miss. 1985)). The question we ask is “whether the judge merely afford[ed] the jury additional time to deliberate or [whether] he attempted] to force a verdict .... ” Sharplin, 330 So.2d at 596.
¶ 22. Here, the judge’s Sharplin instruction was essentially verbatim from our approved language, the one exception being the final sentence.[8] This last sentence simply stated: “Please keep this jury instruc *1085 tion with the other jury instructions.” We also notice Mouton did not acknowledge it was the jury that provided the numerical division. This was done without instruction or request from the trial judge. And the note did not indicate guilt or innocence as to the specific counts. See Sharplin, 330 So.2d at 596 (the mere request and receipt [by the trial court] of the jury’s numerical division without reference to guilt or innocence does not coerce the jury and is not error). As such, there is no evidence of coercion or suggestion by the judge in giving the Sharplin instruction.
III. Prosecutorial Misconduct
¶ 23. Mouton’s final argument cites several moments at trial he now claims show prosecutorial misconduct. He points to his own witness’s statements during the State’s cross-examination, Toni’s differing testimony from an earlier police statement, and the State’s use of Auge’s expert testimony. Mouton suggests these examples, both individually and together, warrant a new trial. We disagree.
¶24. This Court has been clear— “preservation of an issue for appeal requires a contemporaneous objection at trial.” Roby v. State, 183 So.3d 857, 870-71 (Miss. 2016) (quoting Kirk v. State, 160 So.3d 685, 692 (Miss. 2015)). And Mouton’s attempts to now frame several unchallenged issues as “prosecutorial misconduct” does not relieve him from the requirement to contemporaneously object to preserve prosecutorial misconduct issues for appeal. See Simmons v. State, 805 So.2d 452, 489-90 (Miss. 2001).
¶25. Mouton called Shannon, his ex-wife, to testify as a defense witness. During cross-examination, the State asked if Mouton had visitation rights with their three children and if his visitation was supervised. Shannon answered affirmatively to both questions. Mouton now suggests the State improperly implied his supervised visitation requirement related to the prior abuse allegations, when it knew the condition was required under Mouton’s court bond.[9] This was probably an area of inquiry the State should have avoided. But Mouton did not object to the State’s inquiry. Nor did he try to clarify the visitation issue on redirect. So this argument is waived.
¶ 26. Shifting to Toni’s testimony, Mouton argues the State improperly “con-donad] the change” in her testimony “without warning to the defense.” He insists the State knew Toni’s trial testimony—that she was unaware of prior abuse allegations—conflicted with her initial police statement. But the judge allowed the defense to exhaustively impeach her with her prior statement, which was admitted into evidence. And while Mouton claims' he was barred from introducing rebuttal testimony, the witnesses he previously chose to disclose to the State were designated to testify only about Mouton’s character. The trial judge noted this and denied his request. Afterward, Mouton opted not to offer either character witness.
¶27. Again, Mouton’s counsel made no objection based on prosecutorial misconduct, and we see no obvious prejudicial error on the State’s part.
¶ 28. Since this Court has already addressed Mouton’s claims about Auge’s testimony, further discussion is unneees- *1086 sary. To the extent Mouton claims cumulative error, we are not persuaded. “The cumulative error doctrine stems from the doctrine of harmless error, codified under Mississippi Rule of Civil Procedure 61.” Ross v. State, 954 So.2d-968, 1018 (Miss. 2007). But “prejudicial rulings or events that do not even rise to the level of harmless error will not be aggregated to find reversible error.” Id On review, the only issue that even potentially rises to the level of harmless error involves the judge’s ruling on the State’s supposed Rule 9.04 violation. And one potential harmless error does not amount to cumulative error. What is more, even if this Court were to conduct a. cumulative-error analysis, we would examine “whether the issue of innocence or guilt is close,” and because Mouton challenges neither the weight nor the sufficiency of the evidence, we do not find the issue close. Id. So reversal is not proper.
Conclusion
¶ 29. We find no abuse -of discretion in the trial court’s decisions involving the State’s expert testimony. Nor do we find the trial court’s Sharplin instruction improper or préjudicial. And because Mouton failed to. timely object tó alleged prosecuto-rial misconduct, those issues are not properly preserved for this Court’s review. We therefore affirm Mouton’s conviction.
¶ 30. CONVICTION OP SEXUAL BATTERY-COUNT I AND SENTENCE OP TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OP CORRECTIONS, AFFIRMED. APPELLANT SHALL REGISTER AND RE-REGISTER AS A SEX OFFENDER. APPELLANT SHALL RECEIVE CREDIT FOR ANY AND ALL TIME SERVED AS TO THIS CHARGE.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED-BY KING, J. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.

. Sharplin v. State, 330 So.2d 591 (Miss. 1976).

. Mouton, Toni, N.B., and A.B. all spent the night of June 16, 2012, at Jody and Katelyn’s trailer.

.Toni initially took N.B. to the Biloxi Regional Medical Center. That hospital could not perform the examination, so the Biloxi Police escorted Toni and N.B. to Ocean Springs Hospital.

. See Miss. Code Ann. § 97-3-95(l)(d) (Rev. 2014).

. See Miss. Code Ann, § 97-5-23(1) (Rev. 2014).

.During argument on the objection, the court examined and found that State’s Exhibits 1,3, and 4 were photographs, provided during discovery, that clearly showed N.B.’s anus and the "V shaped” tear. As the judge put it, ''I've already ruled on the v. It’s in the photographs, it's there,”

. Even if Auge’s use of the word "V-shaped” violated Rule 9.04, its mention was at most harmless. We may not reverse based on a judge’s handling of a claimed Rule 9.04 violation "unless it affirmatively appears from the record that the violation caused a miscarriage of justice.” Ben v. State, 95 So.3d 1236, 1249 (Miss. 2012) (quoting Payton, 897 So.2d at 942); see also Hurst v. State, 195 So.3d 736, 744 (Miss. 2016) ("even in a total failure to adhere to Rule 9.04 by the trial court, that failure must still prejudice the party to constitute reversible error”) (citations omitted). Auge’s disclosed opinion was and still remained that N.B.'s anal injuries were consistent with sexual assault. And there was testimony from N.B.’s mother and the Biloxi police officer dispatched to investigate N.B.’s sexual assault, which corroborated N.B.’s statement that Mouton had “been playing with his butt and wiener.”

. The instruction approved by this Court states:
I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.
Sharplin, 330 So.2d at 596.

. Mouton claims this information was known only to the State and was discovered during an interview with Shannon that Mouton's counsel was not allowed to attend. This is unsupported. Furthermore, nothing in the record suggests Mouton could not have interviewed his own witness. Nor is it evident Mouton was unaware of the terms of his release on bond.